**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

EDDYSTONE RAIL COMPANY, LLC,

                  Plaintiff,

       -against-

BANK OF AMERICA, N.A.; CAPITAL ONE, N.A.;
FIFTH THIRD BANK; JPMORGAN CHASE BANK,
N.A.; WELLS FARGO BANK, N.A.; THE BANK OF
TOKYO-MITSUBISHI UFJ, LTD.; SUNTRUST
BANK; BMO HARRIS BANK, N.A.; CIBC BANK
USA, *f/k/a PrivateBank & Trust Company*; U.S. BANK
NATIONAL ASSOCIATION; TPG SPECIALTY
LENDING, INC.; PNC BANK, NAT'L ASSOC.; TAO
TALENTS, LLC; and PONTUS HOLDINGS, LTD.,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM DECISION**
**AND ORDER**

19 Civ. 9584 (GBD)

GEORGE B. DANIELS, United States District Judge:

    Plaintiff Eddystone Rail Company, LLC ("Eddystone") brings this action against

Defendants Bank of America, N.A. ("BofA"); Capital One, N.A.; Fifth Third Bank; JPMorgan

Chase Bank, N.A.; Wells Fargo Bank, N.A.; The Bank of Tokyo-Mitsubishi UFJ, Ltd.; SunTrust

Bank; BMO Harris Bank, N.A.; CIBC Bank USA; U.S. Bank National Association; TPG Specialty

Lending, Inc. ("TPG"); PNC Bank, Nat'l Assoc. ("PNC"); Tao Talents, LLC; and Pontus

Holdings, Ltd. ("Pontus") seeking to set aside alleged fraudulent transfers from Bridger Transfer

Services, LLC ("BTS"), Bridger Logistics, LLC ("Bridger Logistics"), and/or their affiliates to

Defendants arising from a rail services agreement (the "RSA"). (*See* Notice of Removal, Ex. A

(Summons and Compl.) ("Compl."), ECF No. 1-1.) According to Plaintiff, the alleged fraudulent

transfers were intended to prevent Plaintiff from recovering the $140 million it is owed by BTS.

(*Id.* ¶ 1.)

Plaintiff originally brought this action in the Supreme Court of the State of New York. (*Id.*) All Defendants, except for Fifth Third Bank and BMO Harris Bank, N.A.,[1] removed this action to this Court on the basis of federal jurisdiction pursuant to the Edge Act, 12 U.S.C. § 632, and admiralty jurisdiction. (Notice of Removal ¶¶ 1–2.) Plaintiff moves to remand this action. (*See* Notice of Pl.'s Mot. to Remand, ECF No. 37.) Plaintiff's motion to remand is DENIED.

## I.   FACTUAL BACKGROUND

### A.  Rail Services Agreement.

In February 2013, Eddystone entered into the RSA with BTS, a crude oil trading and logistics company. (Compl. ¶¶ 2, 43.) Under the RSA, Eddystone agreed to construct and operate a facility in Eddystone, Pennsylvania to transfer crude oil from railcars in North Dakota to barges on the Delaware River. (*Id.* ¶ 2.) BTS made a monthly minimum volume commitment ("MVC") to use the facility at a fee and agreed to pay a deficiency charge if it failed to meet the monthly MVC. (*Id.* ¶ 3.)

In June 2015, Ferrellgas, L.P. and Ferrellgas Partners, L.P. (collectively, "FGP") purchased Bridger Logistics and its subsidiaries, including BTS. (*Id.* ¶ 44.) Between June 2015 and February 2016, FGP and certain of their subsidiaries and officers transferred BTS's assets to other affiliated entities. (*Id.* ¶¶ 5–6, 8.)

In February 2016, more than three years before the end of the RSA's term, BTS ceased using the Eddystone facility and subsequently failed to pay approximately $140 million it allegedly owed in deficiency payments to Eddystone under the RSA. (*Id.* ¶¶ 6, 47.) In April 2016, Eddystone initiated arbitration proceedings against BTS to recover the amounts owed, which resulted in a $140 million settlement in favor of Eddystone. (*Id.* ¶ 7.) BTS, however, lacked assets

---

[1] Defendants Fifth Third Bank and BMO Harris Bank, N.A. had not been served with the complaint as of October 16, 2019, the date of the Notice of Removal. (Notice of Removal ¶ 14.)

to pay the amount due. (*Id.* ¶ 53.) In February 2017, Eddystone commenced a lawsuit in this Court to have judgment formally entered against BTS. (*Id.* ¶ 7.) *See also Eddystone Rail Co. v. Jamex Transfer Servs., LLC*, No. 17 Civ. 1266 (WHP), 2019 WL 181308, at *5 (S.D.N.Y. Jan. 11, 2019). That lawsuit is stayed pending the resolution of a lawsuit Eddystone brought against Bridger Logistics and FGP that same month in the United States District Court for the Eastern District of Pennsylvania. (*Id.* ¶¶ 7, 9.)

### B. The Credit Agreements.

Before, during, and after the period in which BTS was its indirect subsidiary, Ferrellgas, L.P. had a credit agreement with a consortium of lenders, of which Defendant BofA was a member and an administrative agent. (*Id.* ¶ 11.) Under the credit agreement (the "BofA Credit Agreement"), BofA and other lenders provided financing to Ferrellgas, L.P. (*Id.* ¶ 60.) During the period from September 27, 2016 until the agreement terminated in May 2018, the lenders in the BofA Credit Agreement included BofA and the following entities, all of which are Defendants in this action: (1) Capital One, N.A.; (2) Fifth Third Bank; (3) JPMorgan Chase Bank, N.A.; (4) Wells Fargo Bank, N.A.; (5) The Bank of Tokyo-Mitsubishi UFJ, Ltd.; (6) SunTrust Bank; (7) BMO Harris Bank, N.A.; (8) CIBC Bank USA; (9) PNC; and (10) U.S. Bank National Association (collectively, and together with BofA, the "BofA Lenders"). (*Id.* ¶ 12.)

In May 2018, the BofA Credit Agreement was replaced by a similar credit agreement funded by another consortium of lenders, of which Defendant TPG was a member and an administrative agent. (*Id.* ¶ 15.) The other lenders under this agreement (the "TPG Credit Agreement") are Defendants PNC; Pontus; and Tao Talents LLC (together with TPG, the "TPG Lenders"). (*Id.*)

Defendants BofA, Capital One, N.A., JPMorgan Chase Bank, N.A., Wells Fargo Bank, N.A., BMO Harris Bank, N.A., CIBC Bank USA, U.S. Bank National Association, and PNC (collectively, the "Edge Act Banks") are national banking associations. (*Id.* ¶¶ 23–24, 26–27, 30–33.) Defendant The Bank of Tokyo-Mitsubishi UFJ, Ltd. (now known as MUFG Bank, Ltd.) ("MUFG") is a bank formed under Japanese law with branches in the United States. (*Id.* ¶ 28; *see also* Notice of Removal ¶ 7.) Defendant Pontus is a corporation organized under the laws of Bermuda with an office in New York. (Compl. ¶ 36.)

In February 2018, FGP allegedly caused Bridger Rail Shipping, LLC—a subsidiary of Bridger Logistics that received transfers from BTS—to sell over 1,000 railcars to a third-party buyer for approximately $50 million. (*Id.* ¶ 77.) Plaintiff claims that FGP then caused a portion of this sum to be used to repay debts owed by Ferrellgas, L.P. under the BofA Credit Agreement. (*Id.*) Similarly, later in 2018, certain subsidiaries of Bridger Logistics allegedly sold various crude oil injection terminals that had been transferred from BTS. (*Id.* ¶ 78.) According to Plaintiff, FGP then caused $32.8 million of the proceeds to be used to repay debts owed by Ferrellgas, L.P. under the TPG Credit Agreement. (*Id.*) Plaintiff asserts that as administrative agents, BofA and TPG received these repayments and distributed portions of them to the other BofA Lenders and TPG Lenders. (*Id.* ¶ 18.)

## II.   LEGAL STANDARD

Under 28 U.S.C. § 1446(a), a defendant may remove an action from state to federal court by filing a notice of removal in federal court. *See* 28 U.S.C. § 1446(a). Removal is proper in "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). "Once a case has been removed to federal court, a party may move to remand the case to state court." *Shapiro v. Logistec USA, Inc.*, 412 F.3d 307, 310 (2d Cir.

2005). On a motion to remand, the "party seeking removal bears the burden of showing that federal jurisdiction is proper." *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 327 (2d Cir. 2011) (citation omitted); *see also Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006) ("It is well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction.") (citation omitted).   The federal removal statute is to be "strictly construed." *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (citation omitted).

## III.   PLAINTIFF'S MOTION TO REMAND IS DENIED

Plaintiff's motion to remand is DENIED because jurisdiction is proper under the Edge Act.

### A. The Edge Act.

Defendants argue that federal jurisdiction is proper under the Edge Act, 12 U.S.C. § 632. (*See* Notice of Removal ¶ 1.)  "The Edge Act was enacted in 1919 for the purpose of supporting U.S. foreign trade, in part by authorizing the establishment of international banking . . . corporations," or so-called "Edge Act banks." *Am. Int'l Grp., Inc. v. Bank of Am. Corp.* ("*AIG*"), 712 F.3d 775, 778–79 (2d Cir. 2013).   Section 632 of the Act, which was added in 1933, "provid[es] for federal court jurisdiction of certain suits to which these Edge Act banks [are] parties." *Id.* at 779.  Section 632 provides, in relevant part:

> [A]ll suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking, or banking in a dependency or insular possession of the United States, or out of other international or foreign financial operations, either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries, shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits . . . .

12 U.S.C. § 632.  To qualify for removal under section 632, an action must (1) be a civil suit, (2) have a federally chartered corporation as a party, and (3) arise "out of transactions involving

international or foreign banking, . . . or out of international or foreign financial operations." *Wilson v. Dantas*, 746 F.3d 530, 535 (2d Cir. 2014) (emphasis omitted) (quoting *AIG*, 712 F.3d at 780–81). Additionally, these banking transactions or financial operations must be those of the federally chartered corporation that is a party to the suit. *AIG*, 712 F.3d at 784.

Here, Plaintiff and Defendants do not dispute that this action (1) is a civil suit, (Mem. of Law in Supp. of Pl.'s Mot. to Remand ("Pl.'s Mot."), ECF No. 38, at 10), (2) has federally chartered corporations, namely the Edge Act Banks, as parties, (*id.*), (3) arises out of the Credit Agreements, (*see id.*), which are banking transactions within the meaning of the Edge Act, (*id.* at 10 n.5), and that (4) Defendant Edge Act Banks executed and participated in the Credit Agreements, (Compl. ¶¶ 12, 15, 18, 23–24, 26–27, 30–33). Accordingly, the only question in dispute is whether the banking transactions here—namely, the Credit Agreements—are "international or foreign" under the meaning of the Edge Act.

## B. The Meaning of "International or Foreign."

While the plain language of the Edge Act requires qualifying banking transactions to be "international or foreign," 12 U.S.C. § 632, the Act does not define the term, nor has it been defined by Second Circuit case law. Although the Second Circuit has used the phrase "offshore banking" in lieu of "international or foreign banking" to describe transactions covered by section 632, *see AIG*, 712 F.3d at 781, the court similarly does not explain what constitutes "offshore." Plaintiff argues that to engage in international or foreign banking, "an Edge Act Bank necessarily must engage in or direct activities *outside* the United States." (Pl.'s Mot. at 11 (emphasis added).) This argument is not supported by case law. In *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, to which Plaintiff cites in support of its argument, the Second Circuit questioned whether "a mere sale [of corporate notes] within the United States to a foreign purchaser . . . is 'foreign

banking' within the [Edge Act]." 629 F.2d 786, 792 (2d Cir. 1980). The Second Circuit, however, did not address whether the sale of the notes constituted "foreign banking" nor whether "foreign" banking must occur outside the United States in general.[2] *See id.*; *see also Kirschner v. JPMorgan Chase Bank, N.A.*, No. 17 Civ. 6334 (PGG), 2018 WL 4565148, at \*8 (S.D.N.Y. Sept. 24, 2018) ("[T]he *Vintero Sales* court did not resolve whether the sale of the notes constituted 'foreign banking,' because it rejected jurisdiction on that basis on procedural grounds.").

Moreover, contrary to Plaintiff's assertion, the Second Circuit's decision in *AIG* is distinguishable from the case at bar. In *AIG*, the Circuit held that to establish jurisdiction under the Edge Act, "[a] suit must have a federally chartered corporation as a party, and the suit must arise out of an offshore banking or financial transaction *of that federally chartered corporation*." *AIG*, 712 F.3d at 784 (emphasis added). Although the Circuit used the phrase "offshore banking," it did not define the phrase; rather, the court focused on *who* must engage in the banking transaction. *See id.* at 780 ("What is less clear is whether the offshore banking transaction out of which the suit must arise must be a transaction of the Edge Act corporation that must be a party to the suit, or whether any offshore banking transaction suffices, regardless of whether that corporation was involved in it. [ ]This is the issue on which the appeal turns."). Accordingly, the holding in *AIG* did not "reinforce," as Plaintiff claims, that Edge Act jurisdiction requires banking activities to have occurred outside the United States. (*See* Pl.'s Mot. at 14.) As far as the *AIG* decision may have "reined in previously overbroad grants of Edge Act jurisdiction," (*id.* at 15), it did so by narrowly clarifying *who* must engage in a qualifying banking transaction. This, however, has no bearing on the present case given it is undisputed that the Edge Act Banks themselves engaged in the transactions at issue here.

---

[2] The Second Circuit ultimately found jurisdiction under the Edge Act because a federally chartered bank provided a letter of credit on the account of a Venezuelan corporation. *Id.* at 792.

Although the Second Circuit has not defined "international or foreign" under the Edge Act, this Court along with other district courts have found that "a transaction between an Edge Act bank and a foreign counterparty is sufficient to establish an international nexus."[3] *Kirschner*, 2018 WL 4565148, at *8; *see also Highland Crusader Offshore Partners, L.P. v. LifeCare Holdings, Inc.*, 627 F. Supp. 2d 730, 733 (N.D. Tex. 2008) ("The Court finds that the presence of a Bermudan partnership as a lender makes this an international transaction."); *Ritchie Capital Mgmt., L.L.C. v. BMP Harris Bank, N.A.*, No. 14 Civ. 1936 (ER), 2015 WL 1433320, at *4 (S.D.N.Y. Mar. 30, 2015) (holding that an Edge Act bank's receipt and transfer of "funds advanced by Cayman-based plaintiffs" was "sufficient to establish Edge Act jurisdiction," even though "there were never any wires in or out of the United States"); *Nacional Financiera, S.N.C. v. Chase Manhattan Bank, N.A.*, No. 00 Civ. 1571 (JSM), 2001 WL 327159, at *4 (S.D.N.Y. Apr. 4, 2001) (observing that the foreign banking requirement of the Edge Act was arguably satisfied based on a wire agreement between a Mexican bank and a national bank, even though the wire transfer was executed domestically).

In *Kirschner*, a case filed in this Court, Bank of Montreal, a Canadian bank, participated in a syndicated loan transaction with JPMorgan, a federally chartered bank, to provide financing for a U.S. borrower. *See Kirschner*, 2018 WL 4565148, at *3. There, the court concluded that "Bank of Montreal's involvement in the syndicated loan transaction . . . supplie[d] the necessary

---

[3] The cases cited by Plaintiff where district courts denied Edge Act jurisdiction do not show that a transaction between an Edge Act bank and a foreign counterparty is an insufficient basis to prove an international nexus. *See Dexia SA/NV v. Bear, Stearns & Co.*, 945 F. Supp. 2d 426, 429 (S.D.N.Y. 2013) (denying jurisdiction under the Edge Act because the mortgages at issue were originated by a non-party, not because they were domestic transactions); *IKB Int'l S.A. in Liquidation v. JPMorgan Chase & Co.*, No. 12 Civ. 4617 (LTS) (KNF), 2014 WL 2933043, at *1–2 (S.D.N.Y. June 27, 2014) (granting request to remand because the defendants conceded that there was no basis for Edge Act jurisdiction).

international nexus," *id.* at *12, even though all of its employees working on the transaction were located in the United States. *Id.* at *3.

In *Highland Crusader*, the defendant Edge Act bank was a lender and the administrative agent for "a Credit Agreement among a number of lenders (at least one of which is a Bermudan limited partnership), American borrowers, and [the defendant] bank." 627 F. Supp. 2d at 733. The court held that "the presence of a Bermudan partnership as a lender" to the Credit Agreement "makes this an international transaction," even though "the underlying transaction took place entirely within the United States." *Id.* at 733–34.

Here, the banking transactions at issue also involved Edge Act banks and foreign counterparties. Particularly, the BofA Credit Agreement involved, *inter alia*, an Edge Act Bank, BofA, as a signatory and administrative agent, and MUFG, a Japanese bank, as a signatory. (Compl. ¶¶ 12–13, 23, 28.) Similarly, the TPG Credit Agreement involved Edge Act Bank PNC and Pontus, a Bermudan corporation, as signatories. (*Id.* ¶¶ 15, 33, 36.) Therefore, each of these Credit Agreements qualifies as an "international or foreign banking" transaction under the Edge Act. Further, as administrative agent for the BofA Credit Agreement, BofA received alleged fraudulent repayments and disbursed portions of them to other BofA Lenders, including MUFG. (*Id.* ¶¶ 18, 82–83, 96.) Each of these disbursements is also an "international or foreign banking" transaction under the Edge Act. The fact that these transactions occurred entirely within the United States does not preclude jurisdiction under the Edge Act. Rather, MUFG and Pontus's involvement in the transactions is sufficient to satisfy the "international or foreign" element for Edge Act jurisdiction. With the other requirements of the Act also satisfied, as discussed above, this Court has original jurisdiction over the action.[4]

---

[4] Because jurisdiction is found under the Edge Act, this Court need not address whether admiralty jurisdiction exists.

## IV.   CONCLUSION

Accordingly, Plaintiff's motion to remand, (ECF No. 37), is DENIED.  The Clerk of Court is directed to close the motion accordingly.

Dated: New York, New York
       August 27, 2020

SO ORDERED.

GEORGE B. DANIELS
United States District Judge