**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

EDDYSTONE RAIL COMPANY, LLC,

                         Plaintiff,

          -against-

BANK OF AMERICA, N.A., CAPITAL ONE, N.A.,
FIFTH THIRD BANK, JPMORGAN CHASE BANK,
N.A., WELLS FARGO BANK, N.A., THE BANK OF
TOKYO-MITSUBISHI UFJ, LTD., SUNTRUST
BANK, BMO HARRIS BANK, N.A., CIBC BANK
USA *f/k/a* PrivateBank & Trust Company, U.S. BANK
NATIONAL ASSOCIATION, TPG SPECIALTY
LENDING, INC., PNC BANK, NAT'L ASSOC., TAO
TALENTS, LLC and PONTUS HOLDINGS, LTD.,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

MEMORANDUM DECISION
AND ORDER

19 Civ. 9584 (GBD)

GEORGE B. DANIELS, United States District Judge:

      Plaintiff Eddystone Rail Company, LLC brings this action against Defendants Bank of

America, N.A. ("BofA"), Capital One, N.A., Fifth Third Bank, JPMorgan Chase Bank, N.A.,

Wells Fargo Bank, N.A., The Bank of Tokyo-Mitsubishi UFJ, Ltd., Suntrust Bank, BMO Harris

Bank, N.A., CIBC Bank USA *f/k/a* Privatebank & Trust Company, U.S. Bank National

Association, PNC Bank, Nat'l Assoc. (collectively, the "BofA Defendants"), TPG Specialty

Lending, Inc. ("TPG"), Tao Talents, LLC and Pontus Holdings, Ltd. (collectively, "Defendants"),

asserting claims pursuant to New York Debtor and Creditor Law ("DCL") Section 278 and DCL

Section 273.[1] (*See* Compl., ECF No. 1-1.) The BofA Defendants move to dismiss counts one and three of the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (BofA Defs.' Notice of Mot., ECF No. 55.) Defendants TPG Specialty Lending, Inc., PNC Bank, Nat'l Assoc., Tao Talents, LLC and Pontus Holdings, Ltd. (the "2018 Lenders") move to dismiss counts two and three of the complaint for failure to state a claim pursuant to Rule 12(b)(6) or, in the alternative, to stay the action. (Notice of Mot. To Dismiss or Stay, ECF No. 57.)[2]

Defendants' motions to dismiss the complaint pursuant to Rule 12(b)(6) are GRANTED. The 2018 Lenders' motion to stay is DENIED as moot.

## I. FACTUAL BACKGROUND

On June 24, 2015, Ferrellgas, L.P. and Ferrellgas Partners, L.P. ("Ferrellgas," but together "FGP") acquired Bridger Logistics, LLC ("BL") and its subsidiaries (the "2015 Acquisition"): Bridger Administrative Services II, LLC, Bridger Marine, LLC, Bridger Rail Shipping, LLC, Bridger Real Property, LLC, Bridger Storage, LLC, Bridger Swan Ranch, LLC, Bridger Terminals, LLC, Bridger Transportation, LLC, Bridger Energy, LLC, Bridger Leasing, LLC,

---

[1] The complaint does not make clear under which provision of the DCL it seeks to bring its constructive fraudulent conveyance claim (count three). Plaintiff's opposition, however, appears to only address Section 273, arguing that "a simple pleading of insolvency is sufficient to survive a motion to dismiss." (Pl.'s Opp'n at 25.) Thus, this Court will only consider whether count three states a sufficient constructive fraudulent conveyance claim under DCL § 273. Nevertheless, even if Plaintiff is pursuing a claim under DCL §§ 274 and 275, Plaintiff's conclusory and vague allegations are insufficient to plausibly allege that BL and the BL Subsidiaries were left with "unreasonably small capital, DCL § 274; or (iii) [that they] believe[d they would] incur debt beyond [their] ability to pay." *In re Sharp*, 403 F.3d at 53; *Ray v. Ray*, No. 18 Civ. 7035 (GBD), 2019 WL 1649981, at *6 (S.D.N.Y. Mar. 28, 2019), *aff'd*, 799 F. App'x 29 (2d Cir. 2020) ("Plaintiff's general allegations that defendant 'intended or believed that she would incur debts beyond her ability to pay them as they matured,' are 'mere recitation[s] of the statutory language' that are insufficient to satisfy Rule 8.") (citations omitted).

[2] The 2018 Lenders also join in any applicable arguments made by the BofA Defendants in their motion to dismiss. (Mem. of Law in Supp. of the 2018 Lenders' Mot. to Dismiss or Stay ("2018 Lenders' Br."), ECF No. 59, at 5 n.4.)

Bridger Lake, LLC, J.J. Liberty, LLC, and J.J. Addison Partners, LLC (collectively, the "BL Subsidiaries"), and Bridger Transfer Services, LLC ("BTS"). (Compl. ¶¶ 10, 43–44.)

At the time of the 2015 acquisition, BTS was a party to a rail services agreement that it entered into with Plaintiff in February 2013, pursuant to which it was obligated to transfer a monthly volume of crude oil or pay a deficiency fee (the "RSA"). (*Id.* ¶ 40.) Plaintiff alleges that, after the 2015 Acquisition, "FGP sought to get out of the RSA" as a result of economic changes in the crude oil market. (*Id.* ¶ 46.) So, FGP devised a scheme in which it caused BTS to default under the RSA, then transferred all BTS's assets to affiliates in order to "render it judgment-proof." (*Id.* ¶ 47.) In February 2016, BTS stopped performing under the RSA. (*Id.*) "[B]y February 1, 2016, BTS no longer had any assets." (*Id.* ¶ 47.) On February 22, 2016, FGP sold BTS for $10. (*Id.* ¶ 50.) Plaintiff alleges that, prior to the 2015 Acquisition, BTS "accounted for approximately half of the net profits and operating income of Bridger Logistics" and "owned substantial assets." (*Id.* ¶¶ 44–45.)

As a result of BTS's lack of performance under the RSA, Plaintiff initiated an arbitration against BTS to recover amounts due. (*Id.* ¶ 52.) BTS and Eddystone settled the arbitration for $140 million and the arbitration panel issued an award to Eddystone in accordance with that settlement amount. Thereafter, Eddystone sought confirmation of the award in the U.S. District Court for the Southern District of New York in February 2017. (*Id.* ¶¶ 7, 54; Pet. To Confirm Arb. Award, *Eddystone Rail Co. v. Jamex Transfer Servs., LLC*, ECF No. 1, No. 17 Civ. 1266 (JMF) (OTW) (S.D.N.Y. Feb. 17, 2017).) Plaintiff also filed suit in U.S. District Court for the Eastern District of Pennsylvania against FGP, BL and other entities, alleging that defendants fraudulently transferred BTS's assets to BL and the BL Subsidiaries rendering BTS "judgment-proof." (*Id.*

¶¶ 9–10, 75–76; First Am. Compl. ("FAC"), ECF No. 182, *Eddystone Rail Co. v. Bridger Logistics, LLC*, No. 17 Civ. 495 (JDW) (E.D. Pa. Feb. 2, 2017) (the "Pennsylvania Litigation").)[3]

## A. The Credit Agreements.

In November 2009, prior to the 2015 Acquisition, Ferrellgas entered into a credit agreement with a consortium of lenders that "provided financing to Ferrellgas," with a revolving credit line of more than $500 million (the "BofA Credit Agreement"). (*Id.* ¶¶ 10, 60.) While the group of lenders changed over time, between September 27, 2016 until the agreement terminated in May 2018, the consortium consisted of the BofA Defendants. Pursuant to the agreement, BofA acted as administrative agent and "any payments by Ferrellgas [] would be made to BofA" then, distributed to each BofA lender "in accordance with their respective participatory shares." (*Id.* ¶¶ 11–12, 13.) Notably, Plaintiff does not allege how much of the credit line Ferrellgas utilized and when. Moreover, Plaintiff alleges that BL and the BL Subsidiaries guaranteed the BofA Credit Agreement, causing each to incur "an obligation to pay debts exceeding its own value."[4] (*Id.* ¶ 61.) The BofA Credit Agreement terminated in May 2018. (*Id.* ¶ 15.)

On May 4, 2018, the 2018 Lenders Credit Agreement "replaced the BofA Credit Agreement," and provided FGP with "borrowing capacity of at least $575 million." (*Id.* ¶ 70.) TPG "acted as administrative agent" and "any payments by [Ferrellgas] would be made to TPG," who was "required to distribute" the payment among the "[2018] Lenders in accordance with their

---

[3] "[C]ourts may take judicial notice of court filings to establish that certain matters have been publicly asserted, not for the truth of the matters asserted therein." *In re Old Carco LLC*, 509 F. App'x 77, 79 (2d Cir. 2013)) (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)).

[4] While the complaint provides various allegations regarding the security interests and liens granted by BL, the BL Subsidiaries and BTS to Defendants under the BofA and 2018 Lenders Credit Agreements, Plaintiff's opposition states that it "is not seeking a separate recovery for" those security interests and liens. (Pl.'s Opp'n at 27.)

4

respective participatory shares." (*Id.* ¶¶ 15–16.)   Moreover, BL and the BL Subsidiaries guaranteed "all debts" of Ferrellgas. (*Id.* ¶ 71.)

## B. The Transfers.

Plaintiff alleges that "BTS's assets were fraudulently transferred to [BL and the BL Subsidiaries]." (*Id.* ¶ 75.)  Thereafter, FGP caused those entities to "use the assets to pay down" FGP's "debts under the [BofA and 2018 Lenders Credit Agreements]." (*Id.* ¶ 75.)  Beyond these general allegations, Plaintiff only provides marginally more information regarding two transfers to Defendants. First, in February 2018, "FGP caused [Bridger Rail] . . . a recipient of fraudulent transfers from BTS to sell more than 1,000 railcars to a third-party buyer for approximately \$50 million." (*Id.* ¶ 77.)  "FGP then caused a portion of this sum to be used to pay down amounts owed under the BofA Credit Agreement." (*Id.*)  The complaint does not address whether the railcars originated with BTS or include any information regarding the initial transfer of the railcars. In fact, the only transfer from BTS to Bridger Rail referenced in the complaint is the redirection of cash flows from a crude oil delivery arrangement. (*Id.* ¶ 56(a).)

Second, Plaintiff alleges that, in June and July 2018, Bridger Terminals "generated substantial sums" by selling "its remaining assets, including the Swan Ranch Terminal – that had previously been transferred from BTS." (*Id.* ¶ 78.)  Then, "FGP caused \$32.8 million of these proceeds to be used to pay down the [2018 Lenders] Credit Agreement." (*Id.*)  The complaint, however, does not include additional facts regarding the circumstances of the initial transfer of the terminal from BTS.  Indeed, there is no other reference in the complaint to the Swan Ranch terminal. Additionally, regarding Bridger Terminals, the complaint generally states that, between May 2015 and January 2016, "BTS transferred tens of millions of dollars' worth of assets" to Bridger Terminals, "including land, injection stations, throughput agreements, and equipment,

5

fixtures, and personal property – for $10." (*Id.* ¶ 56(c).) The complaint does not indicate whether the terminal was included in these assets. Most notably, Plaintiff asserts in the Pennsylvania Litigation, that "in January 2016, BTS transferred to [Bridger Swan] . . . the Swan Ranch transloading facility . . . valued at $18.5-20 million." (Pennsylvania Litigation, FAC ¶ 67; *contra* Compl. ¶ 56(c) ("BTS transferred to [Bridger Swan] a *transloading facility* and all its transshipment infrastructure . . . valued at $18.5-20 million.") (emphasis added).)

Plaintiff also alleges that "FGP caused [BL and the BL Subsidiaries] to fraudulently transfer their other assets to the" BofA and 2018 Lenders. (Compl. ¶ 75.) "In 2018 alone, FGP caused [BL and the BL Subsidiaries] to sell over $80 million in assets," which "FGP then used to pay" BofA and the 2018 Lenders. (*Id.* ¶ 97.) Plaintiff alleges "[u]pon information and belief, the payments were made to [Defendants] . . . and . . . distributed" to the BofA and 2018 Lenders. (*Id.* ¶ 96.) The complaint provides no additional facts regarding these transfers. Moreover, Plaintiff generally asserts that "[t]he benefits, if any," that BL and the BL Subsidiaries "received under the [BofA and 2018 Lenders Credit Agreements] did not constitute fair consideration or reasonably equivalent value. (Id. ¶ 98.) Finally, and in a similar conclusory fashion, Plaintiff asserts that BL and the BL Subsidiaries "were insolvent or were rendered insolvent by the sale of their assts," "were engaged in . . . a transaction for which their remaining assets were unreasonably small," or "incurred, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay." (*Id.* ¶ 99.)

On June 20, 2019, Plaintiff brought suit against Defendants in the Supreme Court of the State of New York. On October 16, 2019, certain Defendants removed the case to this Court. (Not. of Removal, ECF No. 1.) Subsequently, Defendants moved to dismiss for failure to state a claim.

6

## II. LEGAL STANDARD

### A. Motion to Dismiss.

Under Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully"; stating a facially plausible claim requires the plaintiff to plead facts that enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The factual allegations pled must therefore "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

On a motion to dismiss pursuant to Rule 12(b)(6), a court "accept[s] as true the factual allegations made in the complaint and draw[s] all inferences in favor of the" non-moving party. *BPP Ill., Inc. v. Royal Bank of Scotland Grp. PLC*, 859 F.3d 188, 191 (2d Cir. 2017); *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119–20 (2d Cir. 2013). A district court must first review a plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The court then considers whether the plaintiff's well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *Id.*; *see also Targum v. Citrin Cooperman & Co., LLP*, No. 12 Civ. 6909 (SAS), 2013 WL 6087400, at *3 (S.D.N.Y. Nov. 19, 2013).

7

**B. New York Debtor and Creditor Law § 273.[5]**

To state a claim pursuant to DCL § 273, "a conveyance by a debtor is deemed constructively fraudulent if it is made without 'fair consideration,' and . . . the transferor is insolvent or will be rendered insolvent by the transfer in question." *In re Sharp Int'l Corp.*, 403 F.3d 43, 53 (2d Cir. 2005); *United States v. Watts*, 786 F.3d 152, 165 (2d Cir. 2015) (citation and internal quotation marks omitted); *Integrity Elecs., Inc. v. Garden State Distributors, Inc.*, No. 14 Civ. 3197 (BMC), 2016 WL 3637004, at *7 (E.D.N.Y. June 30, 2016). "The operative reference point for determining insolvency is the time at which the transfer took place[.]" *Kim v. Ji Song Yoo*, 311 F. Supp. 3d 598, 612 (S.D.N.Y. 2018) (citation and internal quotation marks omitted). An entity "is insolvent when the present fair salable value of [its] assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." N.Y. Debt. & Cred. Law § 271(1).

**C. New York Debtor and Creditor Law § 278(1).**

The DCL provides that "[w]here a conveyance or obligation is fraudulent as to a creditor, such creditor . . . may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately . . . from such a purchaser," either "[h]ave the conveyance set aside . . . to the extent necessary to satisfy [the] claim, or [d]isregard the conveyance and attach or levy execution upon the property conveyed." N.Y. DCL § 278 (2001); *Chemtex, LLC v. St. Anthony Enterprises, Inc.*, 490 F. Supp.

---

[5] The relevant sections of the DCL "have been repealed and replaced—effective April 4, 2020—by an act of the New York legislature approved on December 6, 2019." *Ray v. Ray*, 799 F. App'x 29, 31 n.1 (2d Cir. 2020) (citing 2019 N.Y. Sess. Laws Ch. 580 (McKinney)). The new law, however, does "not apply to a transfer made or obligation incurred before [the act's] effective date," 'nor shall [it] apply to a right of action that has accrued before [that] effective date." 2019 N.Y. Sess. Laws Ch. 580; *Ray*, 799 F. App'x at 31 n.1 (citation omitted).

8

2d 536, 544 (S.D.N.Y. 2007); *Integrity*, 2016 WL 3637004, at *10; *Farm Stores, Inc. v. Sch. Feeding Corp.*, 102 A.D.2d 249, 255, 477 N.Y.S.2d 374, 379 (N.Y. App. Div. 1984) (citations omitted). The DCL offers complete protection to an innocent purchaser for value regardless of the intent of the debtor. *Chemtex, LLC*, 490 F. Supp. 2d at 544 (citing N.Y. DCL § 278).

## III.   THE BOFA DEFENDANTS' MOTION TO DISMISS COUNT ONE IS GRANTED[6]

As a threshold matter, Plaintiff contends that the pleading standard for alleging a subsequent conveyance is "necessarily lenient" on a motion to dismiss such that a plaintiff simply needs to "show the relevant pathway" of the conveyance and "merely impl[y] that at least some of the subsequent conveyance originated with the" initial fraudulent conveyance. (Pl.'s Mem. of Law in Opp'n to Defs.' Mots. To Dismiss and the TPG Defs.' Mot. to Stay ("Pl.'s Opp'n"), ECF No. 65, at 9–10.) This Court rejects such a standard.[7]  The pleading standard applicable here is Rule 8(a) and *Twombly's* plausibility requirement. A plaintiff must allege "sufficient factual matter" regarding the subsequent conveyance to "raise a right to relief above the speculative level." Such facts must demonstrate that plaintiff's claim is "'plausible on its face.'" *Twombly*, 550 U.S. at 555 (citation omitted); *Ashcroft*, 556 U.S. at 678.

Plaintiff fails to raise a right to relief above the speculative level. Many of Plaintiff's allegations regarding subsequent transfers of BTS assets or the proceeds therefrom are largely

[6] While Defendants do not concede that the complaint sufficiently pleads initial fraudulent conveyances, that issue is not challenged by the present motions to dismiss counts one and two of the complaint. (*See, e.g.*, Reply Mem. of Law in Further Supp. of the 2018 Lenders' Mot. to Dismiss or Stay, ECF No. 71, at 3.)

[7] Contrary to Plaintiff's contention, the cases it cites do not support such a pleading standard. *See, e.g.*, *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 149–50 (Bankr. S.D.N.Y. 2014) (explaining that a plaintiff must allege "the 'necessary vital statistics [of the purported transfers]—the who, when, and how much' of the purported transfers to establish an entity as a subsequent transferee of the funds."); *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87, 120 (Bankr. S.D.N.Y. 2011) (a plaintiff's "failure to provide even a modicum of specificity with respect to the [s]ubsequent [t]ransfers so as to put the [d]efendants on notice as to which ones [it] seeks to recover does so warrant" dismissal.").

broad conclusory assertions, lacking factual support. (*See, e.g.*, Compl. ¶¶ 18, 19–20, 75, 79.) For example, Plaintiff alleges that "BTS assets that had been fraudulently transferred to [BL and the BL Subsidiaries]," were sold "[s]ometime after mid-2016" and "the proceeds [were] used to reduce [FGP's] debt load . . . for no consideration." (*Id.* ¶ 18.) This allegation is vague and provides no facts that would raise Plaintiff's claim from speculative to plausible. At a minimum, Plaintiff must provide the Defendants with fair notice of the basis of its claim. This requires enough facts regarding the transfer at issue, which, at least, includes such information as "timing, amount, or even which particular defendants are being referenced." *Geo-Grp. Commc'ns, Inc. v. Chopra*, No. 15 Civ. 1756 (KPF), 2016 WL 390089, at \*6 (S.D.N.Y. Feb. 1, 2016); *Madoff*, 458 B.R. at 120.

While Plaintiff's allegation regarding the railcars provides a bit more information, it is still insufficient. Plaintiff alleges that Bridger Rail, "a recipient of fraudulent transfers from BTS," sold "railcars" in February 2018. (Compl. ¶¶ 77, 83.) The formulaic recitation that Bridger Rail is "a recipient of fraudulent transfers from BTS" is simply insufficient to plausibly infer that the railcars originated with BTS. Not only is the complaint devoid of any facts regarding those "fraudulent transfers" but it does not even assert that any of the transfers consisted of the railcars. In fact, the complaint's only other reference to Bridger Rail provides no information regarding the railcars. (*Id.* ¶ 56(a) (alleging that BTS's "cash flows" from a crude oil arrangement were "redirected to other FGP entities, including [Bridger Rail]").) Even in applying Plaintiff's pathway standard, the allegation fails because it does not show the pathway of the railcars from BTS to the BofA Defendants. Consequently, there is no basis to plausibly infer that the railcar sale proceeds

10

were subsequent fraudulent conveyances.[8] Accordingly, count one against the BofA Defendants is dismissed.

## IV.   THE 2018 LENDERS' MOTION TO DISMISS COUNT TWO IS GRANTED

Plaintiff's allegations against the 2018 Lenders similarly fail to state a plausible claim. As explained, many of Plaintiff's allegations are insufficient because they are vague, conclusory or include threadbare recitals of the elements of Plaintiff's claim.

It is only regarding the Swan Ranch Terminal that Plaintiff provides facts beyond its vague assertions but, yet again, it is insufficient. Plaintiff alleges that "BTS transferred tens of millions of dollars' worth of assets to [] Bridger Terminals." (Compl. ¶ 56(c).) Then, "in June and July 2018," Bridger Terminals "sold off its remaining assets, including Swan Ranch Terminal that had previously been transferred from BTS." (*Id.*) First, this allegation suffers from a similar deficiency as count one. There are no facts alleged to plausibly infer that the terminal originated with BTS. There is no indication that the Swan Ranch Terminal was among the "tens of millions of dollars' worth of assets" transferred to Bridger Terminals from BTS. In fact, as the 2018 Lenders point out, Plaintiff's contradictory assertions in the Pennsylvania Action further belies any such an inference. (Pennsylvania Litigation, ECF No. 182 ¶ 67 ("BTS transferred to Bridger Swan Ranch, LLC . . . the Swan Ranch transloading facility").)[9] Second, to the extent Plaintiff attempts to allege

---

[8] The BofA Defendants contend that "Eddystone's lumping of defendants together independently violates Rule 8(a). . . ." (BofA Defs.' Br. at 8 n.4.) While Plaintiff's complaint fails for other the reasons, it does not fail on this ground. In fact, had Plaintiff sufficiently pleaded its claims, it is sufficiently alleged that "payments were made to" BofA and TPG, as administrative agents under their respective credit agreements, and, in accordance with those agreements, BofA and TPG were "permitted to keep a portion of those payments based on its share of the credit facility, and required to distribute the remainder to the other" lenders "in accordance with their respective participatory shares" outlined in the agreements. (Compl. ¶¶ 13, 82, 96.)

[9] Contrary to the 2018 Lenders' contention, a "30-month gap" between transfers does not present an issue to proceeds that can be plausibly traced to fraudulently transferred property. Notably, the 2018 Lenders attempt to distinguish Plaintiff's cases by contending that 30 months is more of "a substantial gap" than 14 or 20 months but do not explain how. (2018 Lender Reply at 5.)

11

that any of the "tens of millions of dollars' worth of assets" transferred to Bridger Terminals were included in that entity's "remaining assets," it fails for lack of factual support. Accordingly, Plaintiff fails to allege a subsequent conveyance claim against the 2018 Lenders.

Lastly, while it need not be addressed given the dismissal of this claim, to the extent the 2018 Lenders advocate for a "dollar-for-dollar" tracing requirement at this juncture of the proceeding, it is rejected. (2018 Lenders' Br., at 7; Reply Mem. of Law in Further Supp. of the 2018 Lenders' Mot. to Dismiss or Stay, ECF No. 71, at 5; *see also Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 548 B.R. 13, 36 (Bankr. S.D.N.Y. 2016) ("The plaintiff's burden at the pleading stage 'is not so onerous as to require dollar-for-dollar accounting of the exact funds at issue.'").) The 2018 Lenders rely on *Generation Resources* but that case is inapposite. (2018 Lenders' Br. at 7.) There, the trustee alleged that a "contractual right to [sales] proceeds" were fraudulently transferred to a transferee. *In re Generation Res. Holding Co., LLC*, 964 F.3d 958, 967 (10th Cir. 2020). That transferee, pursuant to the contractual right, received proceeds and, subsequently, paid the law firm defendants from those proceeds. *Id.* The trustee sought to recover those proceeds. *Id.* at 965. The Tenth Circuit rejected the trustee's assertion that the law firm defendants were subsequent transferees, concluding that the proceeds given to the law firms were "distinct from" the contractual right, which was "the property alleged as fraudulently transferred." *Id.* at 967. Notably, there was no allegation there that the transferee sold the contractual right. Here, Plaintiff alleges the Swan Ranch Terminal was fraudulently transferred. If that terminal was later sold and the proceeds subsequently conveyed to the 2018 Lenders, then the 2018 Lenders are subsequent transferees of fraudulently transferred property. *Farm Stores, Inc.*, 102 A.D.2d 249, 255, 477 N.Y.S.2d at 379 ("[E]ach transferee . . . is liable to

12

the creditor to the extent of the *value* of the . . . property he or she wrongfully received.") (emphasis added).

## V.   DEFENDANTS' MOTIONS TO DIMISS COUNT THREE ARE GRANTED[10]

As an initial matter, Plaintiff's allegations underlying count three of the complaint suffer from the same deficiencies discussed *supra* because they lack sufficient facts regarding the transfers.  Thus, this count similarly warrants dismissal as against the Defendants.[11]

Nevertheless, the BofA Defendants contend that the complaint's allegations are insufficient to support a claim under DCL § 273 because they are nothing more than bare assertions that BL and the BL Subsidiaries were "insolvent."  (Mem. of Law in Supp. of the BofA Lenders' Mot. to Dismiss ("BofA Defs.' Br."), ECF No. 56, at 13.)  Plaintiff's contends that "a simple pleading of insolvency is sufficient to survive a motion to dismiss." (Pl.'s Opp'n at 25.)  It is not.

Plaintiff fails to allege facts sufficient to support a plausible inference that BL and the BL Subsidiaries were at any point insolvent, let alone at the time of the transfers at issue.  "[T]o enable a court to 'evaluate the sufficiency of a complaint's insolvency allegations' on a motion to dismiss, 'the court looks for some sort of balance sheet test or information provided that the [c]ourt can use to infer that [the transferor's] liabilities exceeded their assets at the time the transfers took place.'" *Ray*, 2019 WL 1649981, at \*8 (citing *In re Vivaro Corp.*, 524 B.R. 536, 551 (Bankr. S.D.N.Y.

---

[10] "'It is well settled that in order to set aside a fraudulent conveyance, one must be a creditor of the transferor; those who are not injured by the transfer lack standing to challenge it.'" *Ray v. Ray*, No. 18 Civ. 7035 (GBD), 2019 WL 1649981, at \*5 (S.D.N.Y. Mar. 28, 2019), *aff'd*, 799 F. App'x 29 (2d Cir. 2020) (quoting *Eberhard v. Marcu*, 530 F.3d 122, 129 (2d Cir. 2008)).  A "'creditor whose claim is dependent upon the outcome of litigation becomes a creditor for purposes of the [DCL] when the cause of action accrues.'" *Id.* (quoting *Finkelman v. Greenbaum*, 836 N.Y.S.2d 484, 2007 WL 102464, at \*5 (N.Y. Sup. Ct. 2007)).  Accordingly, Plaintiff has standing to bring its constructive fraudulent conveyance claim (count three).

[11] Moreover, as explained below, count three also fails because the complaint is devoid of any factual nonconclusory allegations regarding whether BL and the BL Subsidiaries received fair consideration directly or indirectly from any credit drawn down by FGP on the credit agreements.

13

2015) (citation omitted); *In re Trinsum Grp., Inc.*, 460 B.R. 379, 393 (Bankr. S.D.N.Y. 2011) (finding complaint containing "net income and net cash flow figures" and alleging that "revenue declined" and "debt levels rose" by specified percentages insufficient)). Many of Plaintiff's allegations are, as it states, simple statements that BL and the BL Subsidiaries "were insolvent or were rendered insolvent," (*see, e.g.*, Compl. ¶¶ 66, 72, 99.), but that is simply not enough. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Ray*, 2019 WL 1649981, at \*6 ("Plaintiff's general allegations that 'the [t]ransfers ... rendered [defendant] insolvent'... are 'mere recitation[s] of the statutory language' that are insufficient to satisfy Rule 8.") (citing *Safety-Kleen Sys., Inc. v. Silogram Lubricants Corp.*, No. 12 Civ. 4849 (ENV) (CLP), 2013 WL 6795963, at \*7 (E.D.N.Y. Dec. 23, 2013)); *Waite v. Schoenbach*, No. 10 Civ. 3439 (RMB), 2010 WL 4456955, at \*7 (S.D.N.Y. Oct. 29, 2010) ("Plaintiff's allegations that the 'transfers ... rendered Defendants insolvent' are conclusory allegations that are insufficient to withstand a motion to dismiss.") (citation omitted). Indeed, Plaintiff's own cited cases do not support otherwise. *See, e.g.*, *United States Small Bus. Admin. v. Feinsod*, 347 F. Supp. 3d 147, 161 n.9 (E.D.N.Y. 2018) (finding conclusory allegation of insolvency sufficient *when considered with other allegations referencing specific dollar amounts from entity's financial statements*).

Similarly, Plaintiff's allegations that BL and the BL Subsidiaries "incurred an obligation to pay debts exceeding [their] own value," and were subsequently "hollowed out by" the transfers are insufficient. (Compl. ¶¶ 19, 61; *see also DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 466 (S.D.N.Y. 2018) (conclusory allegations that entity had "'no legitimate assets,' received 'utterly worthless receivables'" did "not suffice to state a constructive fraudulent conveyance claim"); *Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 445 (S.D.N.Y. 2014)

14

(concluding on summary judgment that "an inability to pay debts as they come due is not sufficient evidence of insolvency," indeed, an "inability to meet [] financial obligations at the time of the conveyance do[es] not directly speak to the issue of solvency).) Here, the complaint does not include any balance sheet test or information. Accordingly, Plaintiff does not sufficiently plead insolvency thus this claim warrants dismissal.[12]

## VI.   CONCLUSION

The BofA Defendants' motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, (ECF No. 55), is GRANTED. The 2018 Lenders' motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, (ECF No. 58), is GRANTED. The 2018 Lenders' motion to stay is DENIED as moot. The Clerk of Court is directed to close the motions, (ECF Nos. 55 and 58), accordingly. Plaintiff may seek leave to replead by letter application, attaching a proposed amended complaint on or before October 15, 2021, if such an amendment would not be futile.[13]

Dated: New York, New York
September 28, 2021

SO ORDERED.

GEORGE B. DANIELS
United States District Judge

---

[12] Defendants contend that "the satisfaction of a preexisting debt qualifies as fair consideration" under Section 278. (BofA Defs.' Br. at 11; 2018 Lenders' Br. at 9.) Yet, in a three-sided transaction such as this, "the well established doctrine of *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979 (2d Cir.1981) holds that the fact that the consideration initially goes to third parties may be disregarded to the extent that the [transferor] indirectly receives a benefit from the entire transaction." *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 638 (2d Cir. 1995). Thus, the Court must determine whether BL and BL Subsidiaries received indirect benefits from the transactions. However, there are no facts in the complaint regarding whether BL and the BL Subsidiaries received fair consideration for the transfers at issue. *See In re Vivaro Corp.*, 524 B.R. 536, 557-58 (Bankr. S.D.N.Y. 2015) ("Plaintiff fails to allege any facts regarding what, if anything (or nothing), [transferor] received in exchange" and "[w]ithout such information, the Court cannot conduct the requisite economic analysis."). Accordingly, the absence of such allegations serves as an impediment to a determination regarding the DCL § 278 defense.

[13] Plaintiff requests that the Court enter a protective order permitting Plaintiff to use documents produced in the Pennsylvania Litigation to amend its complaint, if necessary. Plaintiff may seek a specific protective order prior to or in conjunction with a proposed amended complaint.